### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **FRANK TAYLOR** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-1443 |
| | : | |
| **DOVER DOWNS, INC.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                          **June 9, 2021**

    Employees voluntarily agreeing to arbitrate all discrimination claims against their employer may try to later avoid arbitration if the employer sells its assets or is no longer in business at the time of the dispute. But they may lose this possible argument if the employer remains in business and never sells its assets even if its shareholders change. We cannot disregard employment agreements simply because the employer's owners change. The employer continues with its assets and liabilities regardless of its owners. We today face an employee seeking to avoid his mandatory arbitration agreement with his employer because his employer is now owned by a different shareholder. This contractual mandatory arbitration obligation remains in effect. We cannot find a basis to hold the employer's assets such as employment agreements are void when new owners purchase its stock from the old shareholder. We grant the employer's motion to compel arbitration as agreed to cover "any" discrimination dispute. We dismiss the case lacking jurisdiction as the employee agreed every claim raised before us must be resolved in mandatory arbitration with his employer.

I.      **Alleged facts and matters of public record.**

African American Frank Taylor began working as an Employee Relations Specialist with Dover Downs, Inc. on February 23, 2015.[1] Mr. Taylor signed an Employment Disputes Resolution Agreement with Dover Downs five days before he began work. He agreed to submit employment disputes to binding arbitration.[2] Dover Downs required all new employees sign the Agreement consenting to be legally bound by it.[3] Mr. Taylor agreed to be bound by the rules of the American Arbitration Association; waive the right to a jury trial and the right to sue for punitive damages; and agreed the arbitrator's award is final and binding with no right of appeal except for errors of law and arbitrator misconduct.[4]

Mr. Taylor also agreed to arbitrate "any dispute" arising out of his employment including claims relating to race or sex discrimination.[5] Mr. Taylor and Dover Downs agreed not to arbitrate claims under worker's compensation laws, state unemployment laws, and claims arising under the Employee Retirement Income Security Act. They went so far as to agree claims relating to the enforceability of their Agreement are also subject to arbitration, and the arbitrator may sever unenforceable terms.[6]

### *Twin River Worldwide Holdings, Inc. buys all the stock of Dover Downs Gaming & Entertainment, Inc.*

Dover Downs Gaming & Entertainment, Inc. owned Dover Downs as a subsidiary when Mr. Taylor agreed to mandatory arbitration in 2015. Twin River Worldwide Holdings, Inc. purchased Dover Downs Gaming's stock in a March 2019 stock purchase. The Dover Downs Gaming shareholders agreed to the stock sale and cancelled and converted all shares of their Dover Downs Gaming stock into Twin River shares, with Dover Downs Gaming shareholders receiving 0.089 shares of Twin River stock for each share of Dover Downs Gaming stock.[7] Dover Downs

Gaming then became a wholly-owned subsidiary of Twin River. Dover Downs continued to operate as before, but as a wholly-owned subsidiary of Twin River.[8]

### *Dover Downs does not offer Mr. Taylor the opportunity to apply for the Director position.*

Mr. Taylor's supervisor, Human Resources Director Richard Brackett, announced his plans to leave Dover Downs on November 8, 2019.[9] Two weeks later, Director Brackett announced Melissa Cullen, a Caucasian woman, would replace him as Director of Human Resources.[10] Dover Downs allegedly did not offer this opportunity to Mr. Taylor.

### *Mr. Taylor sues Twin River AKA Dover Downs Hotel & Casino.*

Mr. Taylor responded to this decision to offer the promotion to Ms. Cullen by filing a charge of race and sex discrimination against Dover Downs Hotel & Casino with the Equal Employment Opportunity Commission on May 27, 2020.[11] The EEOC issued Mr. Taylor a "Right to Sue Notice" on September 2, 2020 after investigation.[12]

Mr. Taylor then sued Twin River Worldwide Holdings, Inc. AKA Dover Downs Hotel & Casino on October 26, 2020.[13] Mr. Taylor claims Twin River deprived him of an opportunity to apply for the Director position and hired the less qualified Ms. Cullen because of his race and sex.[14] He also asserts a state law claim for promissory estoppel, claiming Dover Downs promised him the opportunity to apply for the open Director position through an "in house" posting policy it failed to follow. Mr. Taylor alleges Dover Downs has a policy vesting its Human Resources department with the responsibility to advertise open employment positions. The policy requires job openings to be posted "in-house" for five days on the company's website. Mr. Taylor alleges Dover Downs failed to post the open Director position and simply appointed Ms. Cullen as Director. In addition to the alleged irregularity in failing to post the open Director position, Mr. Taylor alleges the Human Resource Director position requires a bachelor's degree in human resource

3

management or related field, with a preference for applicants with advanced degrees. He alleges Ms. Cullen does not have a bachelor's degree in human resource management or related field or an advanced degree. Mr. Taylor alleges he has more experience in human resources than Ms. Cullen and is more academically credentialed, holding a bachelor's degree in business management and two master's degrees, including a master's degree in management.

Defendants moved to dismiss arguing Mr. Taylor improperly named Twin River Worldwide Holdings, Inc. AKA Dover Downs Hotel & Casino as the defendant and improperly served Dover Downs.[15] Mr. Taylor stipulated he incorrectly named Twin River and agreed the proper employer-defendant is Dover Downs.[16] Mr. Taylor filed an amended Complaint suing Dover Downs.[17]

## II. Analysis

Dover Downs moves to dismiss in favor of the mandatory arbitration agreed in February 2015.[18] Mr. Taylor concedes he signed a mandatory arbitration obligation with Dover Downs but argues he did not sign a new agreement with Twin River.[19] Mr. Taylor contends Twin River acquired Dover Downs Gaming and then assumes this entity is the same as Dover Downs. There are no disputed issues of fact.[20] He misses the key issue as a matter of undisputed public record; there is no evidence Dover Downs changed its ownership or changed its name.

### A. Mr. Taylor and Dover Downs agreed to arbitrate.

Dover Downs moves to dismiss arguing Mr. Taylor unambiguously agreed to submit employment claims to arbitration and the arbitration provision is valid and enforceable because Dover Downs, as Mr. Taylor's past and current employer, is the only contracting party. Mr. Taylor concedes there is a valid arbitration provision. He argues Dover Downs is no longer a proper party to enforce the Agreement because Twin River acquired the stock of Dover Downs Gaming. Mr.

Taylor never agreed to a mandatory arbitration with Dover Downs Gaming.  He agreed with Dover Downs. Dover Downs never transferred or assigned its employment contract rights to a non-party. It may enforce Mr. Taylor's mandatory arbitration obligation.

To compel arbitration, we must determine whether "(1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."[21] We apply a presumption of arbitrability.[22] We find no basis to overcome this presumption.

Mr. Taylor's argument is based on his misunderstanding of the public record of the stock sale and then reasoning from the United States Court of Appeals for the Seventh Circuit in *Goplin v. WeConnect, Inc.*[23] The decision by Dover Downs Gaming shareholders to sell their stock to Twin River in exchange for Twin River stock does not alter the obligations of Dover Downs and Mr. Taylor. Neither Dover Downs Gaming nor Twin River are parties to the mandatory arbitration obligations.

Change in ownership of the parent company, Dover Downs Gaming, from its shareholders to Twin River does not affect the assets and liabilities of Dover Downs.[24] Under Delaware law, stock for stock mergers do not change the corporate existence of wholly-owned subsidiaries or their rights and obligations.[25] The undisputed public record confirms when the shareholders of Dover Downs Gaming sold their stock in exchange for Twin River stock, all "property, rights, privileges, powers and franchises" of Dover Downs Gaming vested in the Twin River company.[26] All  "debts, liabilities, obligations, restrictions, disabilities and duties" of Dover Downs Gaming also became those of Twin River and a subsidiary it may have formed to own the former assets of Dover Downs Gaming.[27]  The transaction between Dover Downs Gaming and Twin River did not affect Mr. Taylor's employer Dover Downs.

5

Mr. Taylor's reliance on *Goplin* is misplaced given the undisputed nature of stock transaction between companies not parties to his mandatory arbitration obligation. In *Goplin*, an employee brought a class action against his employer WeConnect alleging it violated wage and hour laws.[28] WeConnect moved to compel arbitration under an arbitration agreement between the employee and Alternative Entertainment, Inc., the same employer's previous name.[29] Judge Peterson found Alternative Entertainment ceased to exist after merging with WeConnect.[30] The Court of Appeals affirmed Judge Peterson after finding WeConnect failed to demonstrate it was a party to the arbitration agreement and could not enforce it.[31]

We face a different issue. The record confirms Dover Downs employed Mr. Taylor.[32] There is no evidence the employer Dover Downs is out of business. Neither Mr. Taylor's employer nor Dover Downs's company status changed when Twin Rivers acquired the stock of Dover Downs Gaming. We find the court of appeals' analysis in *Goplin* distinguishable on its facts.

Mr. Taylor cannot reject his agreement to arbitrate all disputes with his employer Dover Downs even if we somehow considered Twin River as a party to the mandatory arbitration obligation as a successor to Dover Downs. We are guided in this hypothetical upon which Mr. Taylor seemingly posits by the United States Court of Appeals for the Ninth Circuit's recent holding a successor of a corporation could enforce an arbitration agreement of its predecessor. In *Hart v. Charter Communications, Inc.*, a consumer brought a class action against Spectrum Management Holding Co., LLC, the successor of Time Warner Cable, Inc., alleging Time Warner defrauded and misled consumers.[33] Time Warner previously merged into Spectrum. The court, applying Delaware law, held Spectrum had the authority to enforce the agreement because "TWC automatically transferred its 'rights, privileges and powers' to Spectrum pursuant to the merger."[34]

6

So, Mr. Taylor would not succeed in avoiding arbitration even if he chose to continue suing Twin River rather than amending to sue only the party to his arbitration obligation, Dover Downs.

In *Marenco v. DirecTV LLC*, an employee sued his employer for violating wage and unfair competition laws.[35] The employee signed an arbitration agreement with 180 Connect, Inc., later acquired by DirectTV.[36] Direct TV moved to compel arbitration as the successor to the arbitration agreement between employee and 180 Connect. The employee did not dispute the validity of the agreement, but argued the court could not enforce the agreement because DirectTV did not sign the agreement.[37] The court held DirectTV could enforce the arbitration agreement, finding "no doubt the agreement formed one of the terms of [his] employment."[38] Simply because the employee did not sign a new arbitration agreement could not be "a sufficient basis to invalidate his original agreement which constituted one of the established terms of his employment and was never extinguished, rescinded, altered, or revised."[39]

In *Western Air Lines, Inc. v. Allegheny Airlines, Inc.*, Western Air Lines and Mohawk Airlines entered into a mutual aid agreement.[40] Mohawk Airlines later merged with Allegheny Airlines which became the surviving corporation.[41] Western Air Lines sought injunctive and declaratory relief Allegheny Airlines must abide by the terms of the mutual aid agreement it reached with Mohawk Airlines.[42] Allegheny Airlines argued the agreement with Mohawk Airlines terminated at the time of its merger. It also argued the mutual aid agreement did not include the rights of "successors and assigns" to enforce its terms or evidence the parties did not intend for the agreement obligations to survive the merger.[43] The court found the agreement enforceable under Delaware law.[44] All "debts, liabilities, and duties" Mohawk Airlines transferred to the surviving corporation, Allegheny Airlines.[45] The mutual aid agreement included language detailing a method of withdrawal, which made the absence of a "successors and assigns" clause

insignificant.[46] The court held as a matter of public policy if an agreement "[did] not specifically state it is not applicable to successors and assigns, the policy of the law is so clear that survival should be taken as the normal course of events."[47]

Mr. Taylor emphasizes Dover Downs failed to include language about successors and assignees in the Agreement and Twin River never had him sign a new Agreement. Twin River is not the successor or assign of his mandatory arbitration obligation. The Agreement confirms his employment is dependent on signing the Agreement and understanding its binding nature.[48] The absence of a successor and assignees clause is not relevant.

Twin River's role as successor of Dover Downs Gaming under a stock purchase merger, which includes the ownership of Dover Downs, does not alter Dover Downs' right to enforce the mandatory arbitration obligation. But our focus today is on the subsidiary, Dover Downs, as the contracting employer, enforcing the mandatory arbitration obligation. We do not require Mr. Taylor to sign a new Agreement with his employer after a change in its shareholders. Twin River's purchase of Dover Downs Gaming does not affect the enforceability of Dover Downs's Agreement with Mr. Taylor. The arbitration provision remains valid and enforceable.

**B.    We dismiss Mr. Taylor's amended Complaint.**

Mr. Taylor agreed to arbitrate "any dispute" arising out of his employment, including discrimination claims.[49] Mr. Taylor did not argue his employment discrimination claims are outside the scope of the Agreement. Mr. Taylor's claims are subject to arbitration.

Dover Downs asks we dismiss Mr. Taylor's claims. Congress in the Federal Arbitration Act mandates written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable."[50] Under Sections 3 and 4 of the Act, Congress requires us to direct parties to proceed to arbitration on issues for which arbitration has been agreed, and to stay proceedings while the

arbitration is pending.[51] But we "may dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration."[52] Mr. Taylor signed a valid and enforceable arbitration provision for any dispute including his present discrimination claims. He pleads no other relief. There are no non-arbitrable claims left for adjudication. We lack jurisdiction. We must dismiss Mr. Taylor's amended Complaint.

## III.   Conclusion

We grant Dover Downs's motion to compel arbitration and dismiss Mr. Taylor's amended Complaint. A valid arbitration agreement exists between Mr. Taylor and Dover Downs and applies to all claims. We dismiss rather than stay proceedings.

---

[1] ECF Doc. No. 12 ¶¶ 7-8.

[2] ECF Doc. No. 14-1. Above the signatures, the Agreement provides in bold, block letters the employee voluntarily signed the Agreement and has five business days to decide whether to enter into the Agreement. *Id.* at 5.

[3] ECF Doc. No. 14-1§ IV.

[4] *Id.* § III(c), (d), (f).

[5] *Id.* § III(i).

[6] *Id.* § III(j).

[7] Dover Downs Gaming & Entertainment, Inc., Current Report (Form 8-K) (March 26, 2019). Filings with the Securities and Exchange Commission are matters of public record of which we can take notice at the motion to dismiss stage. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (explaining "public record[s]" are materials such as decision letters of government agencies and published reports of administrative bodies).

[8] Twin River Worldwide Holdings, Inc., Quarterly Report (Form 10-Q), at 32 (Nov. 6, 2020).

[9] ECF Doc. No. 12 ¶ 9.

[10] *Id.* ¶¶ 10-11.

[11] *Id.* ¶ 5.

---

[12] *Id.* ¶ 6.

[13] ECF Doc. No. 1.

[14] Mr. Taylor alleges Dover Downs violated 42 U.S.C. § 2000(6), *et seq.* There is no such section in Title VII. We assume Mr. Taylor means 42 U.S.C. § 2000e-2(a)(1) where Congress makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

[15] ECF Doc. No. 8.

[16] ECF Doc. No. 10.

[17] ECF Doc. No. 12.

[18] ECF Doc. No. 14.

[19] ECF Doc. No. 18 at 4-5.

[20] We review Dover Downs's motion to compel under the Rule 12(b)(6) standard because there is no dispute of facts and neither party requested discovery. In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, our Court of Appeals explained we should apply the Rule 12(b)(6) standard "when it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." 716 F.3d 764, 776 (3d Cir. 2013) (alterations and citation omitted). But we should apply the summary judgment standard "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.*

Mr. Taylor does not contest the validity of the mandatory arbitration provision in the Agreement with Dover Downs. We are not addressing questions of fact as to whether Mr. Taylor knew he signed the Agreement. He instead argues Dover Downs cannot enforce the arbitration provision because it is not a named party. Mr. Taylor argues after Twin River's acquisition of Dover Downs Gaming (the owner of his employer), Dover Downs is no longer the same entity as when it entered the Agreement. We must decide whether Dover Downs can enforce the arbitration provision in the Agreement it signed with Mr. Taylor.

[21] *Bacon v. Avid Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006));*ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 523 (3d Cir. 2009)).

[22] *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

---

[23] 893 F.3d 488 (7th Cir. 2018).

[24] *eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, No. 7471, 2013 WL 5621678 at *27 (Del. Ch. Sept. 30, 2013).

[25] DEL. CODE ANN. TIT. 8, § 259(a) (The effect of a merger is that all "the rights, privileges, powers and franchises of each of [the constituent] corporations, and all property, real, personal and mixed, and all debts due to any of said constituent corporations on whatever account . . . shall be vested in the corporation surviving or resulting from such merger or consolidation.").

[26] Twin River Worldwide Holdings, Inc. Registration Statement (Form S-4), 73 (Dec. 21, 2018).

[27] *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 489 (7th Cir. 2018).

[28] *Id.* at 489.

[29] *Id.*

[30] *Id.* at 490.

[31] *Id.* at 491.

[32] ECF Doc. No. 20.

[33] 814 F. App'x 211, 213 (9th Cir. 2020).

[34] *Id.* at 214 (quoting DEL. CODE ANN. TIT. 6, § 18-209(g)).

[35] 183 Cal. Rptr. 3d 587 (Cal. Ct. App. 2015).

[36] *Id.* at 590.

[37] *Id.* at 596.

[38] *Id*. at 595.

[39] *Id.* at 596.

[40] *W. Air Lines, Inc. v. Allegheny Airlines, Inc.*, 313 A.2d 145, 147 (Del. Ch. 1973).

[41] *Id.*

[42] *Id.* at 148.

[43] *Id.* at 148, 153.

---

[44] *Id.* at 154.

[45] *Id.* at 153. (quoting DEL. CODE ANN. TIT. 8, § 259).

[46] *Id.* at 153.

[47] *Id.* at 154.

[48] ECF Doc. No. 14-1 §§ III(k), IV.

[49] *Id.* § III(i).

[50] 9 U.S.C. § 2.

[51] *Id.* at §§ 3, 4.

[52] *Ebner v. Fin. Architects, Inc.*, 763 F. Supp. 2d 697, 699 (D. Del. 2011); *see also Gonzalez v. Citigroup,* No. 10-181, 2011 WL 2148711, at *2 (D. Del. May 31, 2011) (granting a dismissal of the action because the arbitration agreements signed by plaintiff were valid and enforceable and the claims must be resolved by arbitration).